## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

BONNIE C.,

Plaintiff,

v.                                                          3:20-CV-1410
                                                            (ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

PETER A. GORTON, ESQ., for Plaintiff
JESSICA RICHARDS, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 7).

## I.   PROCEDURAL HISTORY

On July 6, 2017, plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning December 31, 2016. (Administrative Transcript ("T") 147-153).  Plaintiff's application was denied initially on September 21, 2017. (T. 64-77).  Administrative Law Judge ("ALJ") Melissa Hammock granted plaintiff's request for a hearing and heard plaintiff's testimony along with testimony from vocational expert ("VE") Deborah Bunn-Durham on July 16, 2019. (T. 31-63).  On August 28, 2019, the ALJ issued an order denying plaintiff's claim. (T.

7-26).  The ALJ's decision became the Commissioner's final decision when the

Appeals Council denied plaintiff's request for review on September 23, 2020. (T. 1-6).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking DIB or Supplemental Security

Income benefits must establish that she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without considering vocational

2

factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff was fifty-four years old on the date of the administrative hearing. (T. 147). She left school after completing the ninth grade, and made several unsuccessful attempts to obtain her high school equivalency degree. (T. 39, 463). At the time of her hearing, she resided with her husband, and had two adult children. (T. 38). Her prior work experience included positions as a house cleaner, backroom employee at a retail store, and co-owner of a used furniture store with her husband. (T. 39-43, 185, 229-236). There is record evidence plaintiff was self-employed as a house painter and house cleaner after the alleged onset date, but the ALJ did not find that this work constituted substantial gainful activity ("SGA"). (T. 12, 258-59, 373, 378).

Plaintiff has a long history of lower back pain and right hand pain with numbness. (T. 269, 299, 350). At her hearing, plaintiff testified that she also experienced shoulder and hip pain that made it difficult to lift and reach, to stand for

4

greater than twenty minutes, or to sit for greater than fifteen minutes. (T. 44). She testified that these impairments limited her to performing ordinary household chores for about twenty minutes at a time before needing to rest for up to an hour. (T. 47).

Plaintiff also experienced psychiatric impairments stemming from childhood trauma that had been variously diagnosed as post traumatic stress disorder ("PTSD"), anxiety, depression, and bipolar disorder. (T. 51-52, 465). At her hearing, plaintiff described symptoms ranging from irritability, panic attacks, difficulty concentrating, lethargy, and intense sadness. (T. 54-57). She managed her symptoms through regular counseling and psychiatric medication. (T. 57). Plaintiff also experienced long-standing difficulty with reading and math skills, but she had not been formally diagnosed with a learning disorder. (T. 58, 262).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 18-21). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   **THE ALJ'S DECISION**

After reviewing the procedural history of plaintiff's application and stating the applicable law, the ALJ found that plaintiff met the insured status requirements through March 31, 2017, and had not engaged in SGA since the alleged onset date of December 31, 2016. (T. 12). At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: "borderline intellectual functioning, attention deficit disorder/attention deficit hyperactivity disorder, generalized osteoarthritis, fibromyalgia, bilateral carpal tunnel syndrome with right middle trigger finger, and

degenerative disc disease in the cervical spine." (T. 13).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment through the date last insured.  (T. 13-17).

At step four, the ALJ found that plaintiff had the RFC to perform less than the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b). (T. 17-28). Specifically, she found that plaintiff could only occasionally climb ladders, ropes, and scaffolds, and could frequently climb ramps and stairs, stoop, kneel, crouch and crawl. (T. 17).  She also found plaintiff could frequently handle and reach overhead bilaterally, and could finger frequently with her dominant right hand. (*Id.*)  She must avoid concentrated exposure to hazards and vibration. (*Id.*)  The ALJ further found that plaintiff was able to perform simple routine tasks, make simple work-related decisions, and have frequent interaction with supervisors, coworkers, and the public. (*Id.*)

In making the RFC determination, the ALJ stated that she considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p. (*Id.*)  The ALJ further stated that she considered opinion evidence and prior administrative medical findings pursuant to 20 C.F.R. §§ 404.1520c. (*Id*.)  The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 17-18).

Next, the ALJ evaluated the VE testimony and found that plaintiff was able to perform her past relevant work as a house worker.[1] (T. 21-22).  Relying on the VE's identification of representative occupations that an individual with plaintiff's RFC could perform, the ALJ made the alternative finding that there were other jobs existing in significant numbers in the national economy that plaintiff could also perform. (T. 22).  Accordingly, the ALJ determined that plaintiff was not disabled at any time between the alleged onset date of December 31, 2016 through the date last insured of March 31, 2017. (*Id.*).

## V.   ISSUES IN CONTENTION

Plaintiff raises two arguments:

1.   The ALJ erred in her RFC determination by failing to properly evaluate the medical opinions and other evidence of plaintiff's physical and mental impairments. (Plaintiff's Brief ("Pl.'s Br.") at 8-19) (Dkt. No. 13).

2.   The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 19).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 5-21) (Dkt. No. 14).  For the reasons stated below, this court agrees with defendant and will dismiss the complaint.

---

[1] The position of house worker involves cleaning and upkeep of private homes, as well as other "odd jobs" around the house.  DICOT 301.687-010 (G.P.O.), 1991 WL 672653.

## DISCUSSION

**VI.**   **RFC/EVALUATING MEDICAL EVIDENCE**

    **A.**   **Legal Standards**

        **1.**   **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements

regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2. Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical

sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with

the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.    Summary of Medical Opinion Evidence

In this case, the ALJ considered several treating source opinions related to plaintiff's physical and mental limitations.  Plaintiff has challenged the ALJ's evaluation of these opinions.  A summary of the opinion evidence is set out below.

### 1.    Dr.  Kevin Hastings

Dr. Kevin Hastings treated plaintiff's back, neck, and hand pain since at least May 2017.  (T. 363-65).  On May 23, 2019, Dr. Hastings completed a questionnaire addressing plaintiff's physical limitations. (T. 359-60).  He identified plaintiff's primary impairments as cervical disc disease, chronic headaches, anxiety, and depression. (T. 359).  In Dr. Hasting's opinion, plaintiff regularly experienced pain, fatigue, diminished concentration, and diminished work pace from these impairments and from side effects caused by medication prescribed to treat those impairments.  (*Id.*)

 Based on these symptoms, Dr. Hastings opined plaintiff could only sit for a total of approximately two hours during the workday, could only stand or walk for approximately two hours total during the workday, and needed to change positions every twenty or thirty minutes. (*Id.*)  He further opined plaintiff can lift no more than ten pounds occasionally and should never lift any greater weight. (*Id.*)

Dr. Hastings originally stated that his opinion addressed the period from October 2017 through May 23, 2019. (T. 360).  On July 15, 2019, he signed an addendum

opining that the same limitations actually dated back to March 2017. (T. 461).  Dr. Hastings explained this change by noting plaintiff "has been treating for these conditions long term." (*Id*.)

### 2.    Nurse Practitioner Julie Bambara

Nurse Practitioner ("NP") Julie Bambara oversaw plaintiff's psychiatric medication since at least October 2018. (T. 404-409).  A different NP in the same practice managed plaintiff's psychiatric medication between the alleged onset date and the date last insured. (T. 44, 305-318).  NP Bambara provided a medical opinion dated May 22, 2019, although portions of the check-box form are incomplete. (T. 355-56).

NP Bambara identified plaintiff's mental health impairments as bipolar II disorder, anxiety, depression, and PTSD. (T. 355).  She opined plaintiff's conditions and medication side effects caused her to experience diminished concentration, diminished work pace, and fatigue. (*Id.*)  In NP Bambara's opinion, plaintiff's impairments would cause her to be off task more than 33% of the workday and miss more than four workdays per month. (T. 355-56).  She also opined plaintiff experienced drowsiness, dizziness, lightheadedness, tiredness, and nausea as side effects of her medication. (T. 356).  As NP Bambara focused on plaintiff's mental health impairments, she did not complete portions of the opinion form related to exertional limitations. (*Id.*)  She stated that her opinion was current as of May 22, 2019, but did not indicate when plaintiff first experienced the limitations described therein. (*Id.*)

### 3.    Licensed Master Social Worker Donald Kain

Licensed Master Social Worker ("LMSW") Donald Kain provided mental health counseling to plaintiff since at least September 2017. (T. 472-473).  He completed a check-box mental health questionnaire dated July 1, 2019, and provided an undated narrative summarizing plaintiff's childhood trauma and its connection to her current mental health diagnoses of depression, anxiety, and PTSD. (T. 462-471, 522-23).

In his questionnaire, LMSW Kain opined plaintiff had marked limitations in her ability to maintain attention and concentration, perform activities within a schedule, be punctual, and perform at a consistent pace. (T. 522).  He also opined that plaintiff had extreme limitations in her ability to maintain regular attendance at work without interruptions from psychologically based symptoms. (*Id.*)  With regard to social interaction, LMSW Kain opined that plaintiff had marked limitations in her ability to accept instructions and respond appropriately to criticism from supervisors and to get along with co-workers, and had extreme limitations in her ability to interact appropriately with the general public. (*Id.*)  He further opined that plaintiff had marked limitations in her ability to respond appropriately to ordinary stressors in a work setting with simple tasks. (*Id.*)

In LMSW Kain's opinion, plaintiff's mental impairments would cause her to be off-task greater than 20% but less than 33% of the workday, and would cause her to miss three or more workdays per month. (T. 523).  He opined these limitations covered the period between September 1, 2017 and July 1, 2019. (*Id.*)  In his undated narrative, LMSW Kain summarized plaintiff's mental health history and opined that plaintiff is not capable of gainful employment. (T. 465).

13

###   C.   Analysis

Plaintiff has only filed a DIB claim. (T. 147-153).  As a result, she must

prove entitlement to DIB for the "very narrow window" between the alleged onset date

of December 31, 2016 and the date last insured of March 31, 2017.  *See Christopher B.*

*v. Comm'r of Soc. Sec.*, No. 5:21-CV-142 (DJS), 2022 WL 3701548, at *4 (N.D.N.Y.

August 26, 2022).  "Under Title II, a period of disability cannot begin after a worker's

disability insured status has expired."  *Elizabeth A. o/b/o A.C.P. v. Saul*, No. 20-CV-

128-A, 2021 WL 2431002, at *3 (W.D.N.Y. June 15, 2021) (citing *Woods v. Colvin*,

218 F. Supp. 3d 204,  207 (W.D.N.Y. Nov. 3, 2016)).  "In other words, '[i]t is well

established that evidence of an impairment which reached disabling severity after the

expiration of insured status, or which was exacerbated after such expiration, cannot be

the basis for the determination of entitlement to a period of disability and disability

insurance benefits, even though the impairment itself may have existed before the

claimant's insured status expired.'"  *Ewing v. Astrue*, No. 5:11-CV-1418 (TJM), 2013

WL 1213129, at *3 (N.D.N.Y. Mar. 22, 2013) (citation omitted).

Plaintiff contends that the ALJ improperly rejected relevant medical

opinions, but this court finds the ALJ's decision demonstrates an appropriate evaluation

of the medical opinions and other record evidence to reach a disability determination

for the relevant period  that is supported by substantial evidence.  "[A]lthough there

was no medical opinion providing the specific restrictions reflected in the ALJ's RFC

determination, such evidence is not required when 'the record contains sufficient

evidence from which an ALJ can assess the [claimant's] residual functional capacity.'"

*Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)); *Corbiere v. Berryhill,* 760 F. App'x 54, 56 (2d Cir. 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly discussing plaintiff's physical limitations and relying on plaintiff's treatment notes to formulate the RFC); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (where "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required.").

Here, the ALJ assembled sufficient evidence from the medical opinions, plaintiff's testimony, and records post-dating the date last insured to reach an RFC determination for the narrow window of time applicable to plaintiff's DIB application. In the process of doing so, the ALJ frequently gave plaintiff "the benefit of the doubt" by incorporating physical or mental limitations that were not well documented prior to the date last insured, but ultimately reached an RFC determination supported by substantial evidence that does not present grounds for remand. *See Bliss v. Colvin*, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("The fact that the ALJ afforded Plaintiff the benefit of the doubt" and included additional functional limitations in the RFC is not grounds for remand.)  The ALJ's evaluation of plaintiff's physical and mental limitations is summarized below.

### 1.    Physical Limitations

At her hearing, plaintiff testified that she could walk for no longer than twenty-five minutes, stand for no longer than twenty minutes, and sit for no longer than twenty minutes at one time. (T. 46-47).   Dr. Hastings completed a questionnaire that, as amended, provided his treating source opinion regarding plaintiff's physical impairments during the relevant period. (T. 359-60, 461). Dr. Hastings largely mirrored the limitations described by plaintiff, opining that she could only stand or sit for a total of about two hours each over the course of a workday, and would need to change positions every twenty to thirty minutes. (T. 360).

The ALJ noted that Dr. Hastings' opinion was prepared more than two years after the date last insured. (T. 20).  In addition, the majority of Dr. Hastings' opinion was in a check-box format, with limited narrative. (T. 359-60). Appropriately, the ALJ did not focus on either of these factors when evaluating the persuasiveness of Dr. Hastings' opinion.  *See Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) ("the nature of an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue-not its form-and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert[.]"); *Karen S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-960 (CFH), 2022 WL 462086 at *9 (N.D.N.Y. Feb. 15, 2022) ("Although the relevant period for the ALJ's disability determination is before the plaintiff's date last insured, 'medical evidence obtained after a plaintiff's date last insured can be used to show that plaintiff was disabled prior to her date last insured[ ]' as long as it pertains to already-existing impairments.")

(citations omitted).

Instead, the ALJ evaluated the opinion's supportability and consistency with the overall treatment record, including Dr. Hastings' own treatment notes. (T. 20). Because treatment records for the narrow period between December 2016 and March 2017 were limited, the ALJ first compared Dr. Hastings' restrictive opinion to his treatment notes closest in time to the date last insured, and found evidence of minimal physical functional limitations. Even several years after the date last insured, there was no record of significant deterioration in plaintiff's physical condition, despite the chronic and progressive nature of her physical impairments. The inconsistency between Dr. Hastings' retrospective opinion and contemporaneous treatment notes was one factor supporting the ALJ's finding that the treating physician's opinion was unpersuasive.

For example, plaintiff visited Dr. Hastings on May 31, 2017. (T. 269-70). She described her recent pain level as ranging from 4/10 to 6/10 and complained of "increased achiness and soreness today due to increased work load lately." (T. 269). She appeared "healthy and well-developed" with "[n]o signs of apparent distress present." (*Id.*) Plaintiff described similar pain levels in July 2017, and reported "monthly massage and medications continue to decrease pain and increase functional capacity." (T. 271). Dr. Hastings performed osteopathic manipulation treatment[2] ("OMT") on plaintiff's back and upper extremities at this session and observed

---

[2] OMT is the application of gentle pressure to manipulate muscles, soft tissues, and joints. https://my.clevelandclinic.org/health/treatments/9095-omt-osteopathic-manipulation-treatment

improved range of motion. (*Id.*)

In September 2018, plaintiff reported a pain level between 1/10 and 2/10, and described low pain levels despite working on home remodeling projects. (T. 387).  In October 2018, plaintiff continued to report good pain relief with medication and OMT as needed. (T. 389).  Subsequent treatment notes show that plaintiff's back and shoulder pain continued to be well-controlled and responsive to treatment, with increased pain typically coinciding with increased physical activity. (T. 391-92, 395, 399, 402).  None of the treatment notes suggest the significant physical functional limitations depicted in Dr. Hastings' opinion.

The ALJ also found Dr. Hastings' opinion unpersuasive because it appeared to overstate the side effects from plaintiff's medication during the relevant period. (T. 20).  Although Dr. Hastings attributed fatigue and concentration deficits to plaintiff's prescription medication, all of his treatment notes depict plaintiff tolerating her medication without any significant side effects. (T. 20, 363, 371, 373, 376).  In addition, the ALJ's review of the record showed that plaintiff did not begin several of the medications listed in Dr. Hastings' opinion until after the date last insured. (T. 20, 269, 360).

 Beyond his own treatment notes, the ALJ evaluated Dr. Hastings' opinion for consistency with treatment notes from other providers dated before and after the date last insured. (T. 18-20).  In doing so, the ALJ recognized that plaintiff's diagnoses of osteoarthritis and fibromyalgia and associated pain date back at least to 2013, but found no evidence of significant functional limitations from these impairments. (T. 18, 350).

18

Notes from this period generally document controlled pain and other symptoms with few associated limitations affecting plaintiff's ability to sit, stand, or walk. (T. 287, 296, 307, 311-12).  In June 2017, plaintiff reported an aching pain in her right hand that had been present for about a year. (T. 330).  In September 2017, plaintiff underwent surgery to address a ganglion cyst and "very mild" carpal tunnel syndrome in her right hand. (T. 327-28).   As recently as August 2018, physical examination notes describe plaintiff as "doing quite well at this time," with a stable gait, intact strength, and good range of motion in the extremities with only mild tenderness. (T. 19, 352).  These notes describe plaintiff's fibromyalgia symptoms as being well-controlled with medication, and her osteoarthritis as "minimally problematic." (T. 352).

Lacking another medical opinion addressing plaintiff's physical functional limitations, the ALJ reasonably relied on the extensive evidence in Dr. Hastings' treatment notes and the broader medical record showing plaintiff regularly engaged in strenuous physical activities to conclude plaintiff could meet the physical demands of light work, as modified in the RFC. (T. 330).  For example, plaintiff operated a used furniture store just prior to the alleged onset date where she regularly "moved furniture," "sanded it, repaired it, painted it or refinished it and stained it." (T. 171).  Plaintiff reported some difficulties dealing with customers and finding help to move furniture, but the ALJ cited other evidence suggesting that she stopped working in this business for financial reasons unrelated to her impairments. (T. 18, 42-43, 172, 185).

In May 2017, plaintiff advised Dr. Hastings that she felt soreness "due to increased work load lately," although the nature of that work is unclear. (T. 269).

Clarification comes from July 2017 treatment notes, where plaintiff described herself as "self-employed as a house cleaner," and motivated to obtain her high school equivalency degree "in order to apply for less labor intensive jobs as it is becoming more difficult for her to clean as she ages." (T. 258-59).  In February 2018, Dr. Hastings noted that plaintiff "continues to work for herself painting houses and cleaning." (T. 373).  In May 2018, plaintiff reported good pain relief despite being "very active with seasonal activities at home as well as her work of painting houses." (T. 378).  In June 2018, plaintiff again reported being "very active with work and seasonal activities." (T. 381).  In August 2018, plaintiff began "workout classes" to lose weight. (T. 385).  In September 2018, plaintiff advised a treating physician's assistant at Dr. Hastings' practice that she "continues to do some home improvement remodeling and has been doing well with overall low pain levels." (T. 387).  In February 2019, plaintiff advised Dr. Hastings that she "is up to 8 miles a day on her treadmill," and had lost more than thirty pounds. (T. 395).  In April 2019 and June 2019, Dr. Hastings noted that plaintiff "continues to walk daily on her treadmill." (T. 397, 402).

As a result of this strenuous activity, plaintiff often sought treatment for "aching and stiffness." (T. 269, 378, 381).  Still, her treatment history provides no support for the restrictive opinion from Dr. Hastings or plaintiff's testimony regarding her ability to sit, stand, or walk. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (finding the ALJ properly considered opinion of treating physician where the opined limitations were inconsistent with the doctor's own treatment notes and plaintiff's self-reported activities of daily living); *Krull v. Colvin*, 669 F. App'x 31, 32

(2d Cir. 2016) (ALJ properly discounted opinion in light of inconsistent reported activities). Without a well-supported medical opinion, the ALJ instead based her RFC determination on medical record evidence showing plaintiff's ability to perform activities that the ALJ deemed consistent with the physical requirements of light work.[3] (T. 18-20). Having identified substantial evidence of minimal physical impairments for the narrow period between the alleged onset date and the date last insured, the ALJ could reliably "render a judgment about functional capacity even without a physician's assessment." *Terry R. v. Kijakazi*, No. 20-CV-1544L, 2022 WL 2704529, at *3 (W.D.N.Y. July 12, 2022) (citation omitted). Based on the ample evidence in the record regarding plaintiff's ability to perform strenuous activity including daily eight mile walks on a treadmill, painting houses, and cleaning houses, the ALJ was thus able to make a "common sense" determination of plaintiff's RFC. *See Pinkowski v. Comm'r of Soc. Sec.*, No. 1:19-CV-00173 (EAW), 2020 WL 1969312, at *6 (W.D.N.Y. April 24, 2020) ("The Court agrees with the ALJ that limiting Plaintiff to light work afforded her the benefit of the doubt, in light of the "benign diagnostic imaging" and lack of any significant medical findings, as well as Plaintiff's largely intact physical activities of daily living."); *Mack v. Comm'r of Soc. Sec.*, No. 1:18-CV-265 (MAT), 2019 WL 1994279, at *4 (W.D.N.Y. May 6, 2019) ("Although the ALJ found that Plaintiff has "severe" impairments, the treatment notes and recommendations provided by Plaintiff's

---

[3] At the hearing, the VE testified that the job of cleaning houses as generally performed is typically considered medium work, but she considered it light work based upon plaintiff's description of how she had previously performed it. (T. 59). The court also takes notice that the Dictionary of Occupational Titles generally classifies the physical demands of house painting as medium work. DICOT 840.381-010 (G.P.O.), 1991 WL 681836.

treatment providers regarding his physical impairments do not reflect disabling functional limitations and thus, it was not impermissible for the ALJ to render a common sense judgment regarding Plaintiff's physical functional limitations.")

This court recognizes that the ALJ's RFC determination lacks a function-by-function assessment of plaintiff's ability to meet the physical demands of light work, a defect that often requires remand. *DeFrancesco v. Berryhill*, No. 16-CV-6575 (FPG), 2017 WL 4769004, at *4 (W.D.N.Y. October 23, 2017) ("without a function-by-function assessment relating this evidence to the requirements of light work or reliance on a medical source's opinion as to [plaintiff's] functional capacity, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review"). Still, the Second Circuit has held that there is no *per se* rule that the failure to perform such an analysis requires remand; rather, "the relevant inquiry is whether the ALJ applied the 'correct legal standards and whether . . . the determination is supported by substantial evidence.'" *Merri C. v. Comm'r of Soc. Sec.*, 20-CV-0752 (DJS), 2021 WL 3848479, at *3 (N.D.N.Y. Aug. 27, 2021) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). "As such, the focus is on whether the RFC finding provides an adequate basis for meaningful judicial review, and whether the ALJ's failure to provide an explicit function-by-function analysis frustrates such meaningful review." *Gwenn A. v. Kijakazi*, No. 1:20-CV-1168 (BKS/DEP), 2022 WL 1129810, at *10 (N.D.N.Y. Feb. 2, 2022), *rep. & rec. adopted*, 2022 WL 819199 (N.D.N.Y. March 18, 2022); *Columbel v. Comm'r of Soc. Sec.*, No. 6:16-CV-773 (CFH), 2017 WL 3175599, at *10 (N.D.N.Y. July 26, 2017) (rejecting

plaintiff's argument that because treating physician provided only functional opinion in the record, ALJ was required to accept the limitations therein).

The ALJ's recitation of the overall treatment record and the extensive evidence of plaintiff's ability to regularly perform strenuous physical activity allows for meaningful review because this court is able to glean the rationale of the ALJ's decision.[4]  *See Coleman v. Comm'r of Soc. Sec.*, No. 5:14-CV-1139, 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (holding that "an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.") (quoting *LaRock ex rel. M.K. v. Astrue*, No. 10-CV-1019, 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011)).  Therefore, this court finds that even if the ALJ could have expressed her findings more clearly by specifically addressing plaintiff's ability to meet the exertional requirements of light work, plaintiff has not shown how the record credibly supports greater limitations related to her ability to stand, walk, or sit throughout the workday than are accounted for in the RFC.  *See Brenden R. v. Comm'r of Soc. Sec.*, 20-CV-0821 (DNH), 2021 WL 5965164, at *6 (N.D.N.Y. Dec. 15, 2021) (noting that "[t]he burden is on plaintiff to show that the record evidence demands a more restrictive RFC"); *Columbel*, 2017 WL 3175599, at *13 (declining to remand where "Plaintiff has not pointed to any medical evidence from the relevant period that

---

[4] Indeed, if there had been ambiguity in the record regarding plaintiff's ability to walk, stand, and regularly perform strenuous physical activity, the lack of a function-by-function analysis would likely have required remand for further administrative proceedings. *See, e.g., Robert T. v. Comm'r of Soc. Sec.*, No. 6:20-CV-1121 (ATB); 2022 WL 1689459, at *7 (N.D.N.Y. May 26, 2022) (remanding where "it is not 'clear' from the record that plaintiff could perform the physical exertions required of his RFC for sedentary work as modified by the ALJ.").

suggests an inability to perform the basic requirements of [the RFC] and this Court did not find any such evidence in its review.").  Plaintiff has therefore not met her burden to show that the ALJ's failure to perform a specific function-by-function analysis prevents meaningful review or resulted in an "erroneous omission of greater limitations from the RFC determination" of plaintiff's physical impairments during the narrow window between plaintiff's alleged onset date of December 31, 2016 and March 31, 2017. *Gwenn A.*, 2022 WL 1129810, at *10.

## 2.   Mental Limitations.

The ALJ conducted a similar inquiry of the full treatment record with regard to plaintiff's mental and psychiatric limitations.  Neither of the psychiatric opinions in the record directly address the relevant time period.  By its terms, the opinion from NP Bambara represented plaintiff's condition as of May 19, 2019.[5]  (T. 356).  LMSW Kain expressly limited his opinion of plaintiff's mental health impairments to the period between September 1, 2017 and July 1, 2019, although his separate narrative suggested that her impairments were present while she was still working. (T. 462, 523).

A medical opinion rendered after the date last insured and not addressing the relevant period is typically of little to no value to the disability determination.  *See Durakovic v. Comm'r of Soc. Sec.*, 3:17-CV-0894(TJM/WBC), 2018 WL 4039372, at *4-5 (N.D.N.Y. May 30, 2018) (collecting cases), *rep. & rec. adopted*, 2018 WL 4033757 (N.D.N.Y. Aug. 23, 2018).  Still, the ALJ reviewed plaintiff's overall

---

[5] The opinion questionnaire allowed a treating source to indicate the estimated start date for the limitations described therein, but NP Bambara left this portion of the questionnaire blank. (T. 356).

psychiatric treatment history to assess both the validity of the Bambara and Kain

opinions and the mental functional limitations that would impact plaintiff's RFC. (T.

20-21).

The ALJ noted that plaintiff did receive mental health treatment during the

period between her alleged onset date and the date last insured, including psychiatric

medication, for symptoms related to depression, anxiety, and impaired attention. (T. 20-

21, 276).  Still, the mental status examination during this period depicted "normal"

findings with regard to plaintiff's mood, affect, and orientation to time, place, person,

and situation.  (T. 20-21, 307, 312).  Treatment notes just prior to the alleged onset

date, from November 2016, describe plaintiff's difficulties with attention and

concentration as improving with medication. (T. 314). Treatment notes dated July 2017,

or shortly after the date last insured, likewise document improvement in plaintiff's

attention and concentration with medication. (T. 294).  Mental status examinations

addressing the more remote period covered by the Kain and Bambara opinions show

similar stable results.  (T. 269, 289, 291, 296, 321, 364, 369, 371, 374, 397, 402).

The ALJ also noted that the more detailed mental health evaluations in the record

all came after the date last insured. (T. 19-20).  In July 2017, plaintiff was assessed for

potential learning disorders, after experiencing difficulty passing the test to obtain her

GED and certificate of high school equivalency. (T. 258).  Her evaluators ultimately

concluded that plaintiff exhibited below average intelligence, but did not meet the

criteria for a learning disorder. (T. 262).  The evaluators attributed some of plaintiff's

academic difficulties to inadequate educational opportunities as a child, and expressed

optimism that plaintiff "has the capacity to learn and the ability to pass the GED test with adequate training, support, and effort." (*Id.*)  Symptoms of depression, anxiety, and low self-esteem were also deemed to contribute to her difficulties maintaining attention and consistent effort during preparation for the GED examination. (*Id.*)

In August 2017, plaintiff was evaluated at an Attention Disorders Clinic. (T. 276-283).  She demonstrated difficulties with reading and listening comprehension, as well as completion of working memory tasks. (T. 280).  Based on these results and plaintiff's description of her long-standing symptoms, the evaluator made a provisional diagnosis of attention deficit hyperactivity disorder, but wanted to rule out other potential causes for her difficulties with attention and concentration, ranging from her diagnosed depression and anxiety disorders to dietary issues such as a Vitamin D deficiency and insufficient protein intake. (*Id.*)

Although prepared after the date last insured, the ALJ considered this "evidence in a light most favorable to the [plaintiff]," and found support in the broader treatment record for consistent but controlled psychiatric symptoms of "low to moderate severity" affecting plaintiff's ability to concentrate and maintain a consistent pace. (T. 20, 294, 343, 434).  The ALJ incorporated these findings into the RFC determination by limiting plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions. (T. 20).  This court finds that this approach is based upon substantial evidence and appropriately accommodated plaintiff's limitations with anxiety, staying on task and maintaining a consistent work pace.  *See Michael C. v. Berryhill*, No. 17-CV-1395, 2019 WL 1228553, at *5-6, (N.D.N.Y Mar. 15, 2019) (holding that the

ALJ properly accounted for the claimant's moderate limitations in maintaining a regular schedule by "providing RFC limitations such as 'simple, repetitive instructions' and limiting the amount of judgment and changes in the work setting"); *Tatelman v. Colvin*, 296 F. Supp. 3d 608, 613 (W.D.N. Y. 2017) ("it is well-settled that a limitation to unskilled work . . . sufficiently accounts for limitations relating to stress and production pace"); *Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017), appeal dismissed (Mar. 30, 2018) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning."); *Sipe v. Astrue*, 873 F. Supp. 2d 471, 481 (N.D.N.Y. 2012) (holding that moderate limitations in "relating to instructions, concentration, [and] attendance" are consistent with unskilled work).

The ALJ found no support in the record for LMSW Kain's opinion that plaintiff had marked to extreme limitations in all areas of social interaction. (T. 19-20, 522). Still, the ALJ also gave plaintiff the benefit of the doubt by limiting plaintiff to frequent social interaction, based almost entirely on plaintiff's own reports of anxiety and irritability when being in crowded areas. (T. 15, 43, 278, 287). This limitation is consistent with the available evidence of low to moderate difficulties in social interaction. *Wightman v. Comm'r of Soc. Sec.*, No. 18-CV-6295L, 2019 WL 2610712, at *2 (W.D.N.Y. June 26, 2019) ("ALJ's finding that plaintiff's moderate limitation in social interaction permits him to tolerate "frequent" contact with supervisors, coworkers and the public was not erroneous"); *Carthron-Kelly v. Comm'r of Soc. Sec.*, 5:15-CV-0242 (GTS/WBC), 2017 WL 9538379, at *7 (N.D.N.Y. Sept. 25, 2017) (". .

27

.because even a moderate limitation in social functioning would not preclude the demands of unskilled work, the ALJ's RFC determination that Plaintiff could frequently interact with others was not inconsistent with [medical opinion] that Plaintiff had "mild to moderate" limitations in this area.").

## VII.   PAST RELEVANT WORK/STEP FIVE DETERMINATION.

### A.   Legal Standards

At step four of the analysis, the ALJ must address a claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).  Past relevant work is work that a claimant has performed in the past 15 years and that constituted substantial gainful activity. 20 C.F.R. § 404.1565(a), (b). If the claimant can return to his or her past relevant work, the Commissioner will find that he or she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

"A vocational expert or specialist may offer expert opinion testimony . . . about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  If a claimant is unable to perform a full range of a particular exertional category of work, or the issue is whether a claimant's work skills are transferable to other jobs, then the ALJ may also seek VE testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations.  20 C.F.R. §§ 404.1566, 416.966; *Rautio v. Bowen*, 862 F.2d 176, 180 (8th

Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

**B.     Application**

Here, the ALJ sought VE testimony given the multiple non-exertional limitations in plaintiff's RFC and the resulting limitations on the range of available light occupations. (T. 58-62).  The VE testified someone of claimant's age, education, work experience, and RFC could still perform plaintiff's past work as a house worker, and could perform a number of other representative occupations existing in significant numbers in the national economy. (T. 59-61).  She also testified that her analysis was based on her professional experience and consistent with the Dictionary of Occupational Titles. (T. 61-62).

Because the RFC determination was supported by substantial evidence, the ALJ's hypothetical to the VE was proper.  *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' . . . .") (citation omitted).  Thus, the ALJ could properly conclude plaintiff could return to her past work or perform other jobs existing in significant numbers in the national economy, and therefore was not disabled.  Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supported her determination that plaintiff was not under a disability within the meaning of the SSA.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's

complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**


Dated: September 29, 2022

Andrew T. Baxter
U.S. Magistrate Judge